UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DENNIS NEYLAND, *et al.* | CIVIL ACTION |
| VERSUS | NO. 25-2010 |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY | SECTION M () |

**ORDER & REASONS**

Before the Court are two motions filed by defendant Allstate Vehicle and Property Insurance Company ("Allstate"): a motion *in limine* to exclude plaintiffs' repair estimates and a motion for summary judgment on plaintiffs' breach-of-contract and bad-faith claims arising from a December 9, 2024 loss.[1] Plaintiffs Dennis and Kelli S. Neyland (together, "Plaintiffs") respond in opposition,[2] and Allstate replies in further support of its motions.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I. BACKGROUND

This case concerns an insurance coverage dispute. Plaintiffs allege that Allstate issued a homeowner's insurance policy covering their property in Slidell, Louisiana, with effective dates of July 16, 2024, through July 16, 2025.[4] The policy provided coverage for the dwelling in the amount of $480,045, subject to a $5,000 deductible.[5] Plaintiffs allege that their property sustained damage on December 9, 2024, as a result of an HVAC leak.[6]

[1] R. Docs. 16; 18.
[2] R. Docs. 22; 23.
[3] R. Docs. 24; 25.
[4] R. Doc. 1 at 1-3.
[5] R. Doc. 18-2 at 1.
[6] R. Doc. 1 at 3. Plaintiffs also alleged that their property was covered by an Allstate-issued homeowner's insurance policy with the effective dates of July 16, 2023, through July 16, 2024, and that the property sustained damage on March 15, 2024, as the result of a wind and hailstorm. *Id.* at 2-3. However, Allstate moved for summary judgment on Plaintiffs' claims related to the March 15, 2024 event because the policy excluded coverage for losses

On January 8, 2025, Bill Gipson, a public adjustor engaged by Plaintiffs, reported to Allstate, on Plaintiffs' behalf, a claim related to the December 9, 2024 HVAC leak.[7] Gipson's report stated that three air conditioning units had frozen and leaked, causing water damage.[8] Five days later, on January 13, 2025, Brett McCall, an Allstate employee, inspected the property with Gipson.[9] Two of the three air conditioning units had been removed before McCall's inspection.[10] McCall also noted that demolition, drying out, and cleanup were completed and repairs were underway by the time he inspected the property.[11] McCall was shown an area above the master bedroom where one of the air conditioning units had been installed, but was removed prior to his inspection.[12] The ceiling of the master bedroom and attic insulation were also removed.[13] McCall observed what he believed to be long-term water exposure on an attic support beam that was rotted and discolored.[14] He was not provided with a report from the HVAC company at the time of his inspection.[15] McCall saw no evidence of "a one-time sudden and accidental leaking event," instead determining that the water leak was an ongoing, long-term issue and that the home suffered from overall disrepair which also contributed to moisture accumulation.[16]

On January 15, 2025, McCall requested that Plaintiffs provide to him the HVAC report and all photographs of the damage before the mitigation had begun and all other documents

---

caused by wind or hail. R. Doc. 17. In response, Plaintiffs stated that they would not pursue any claims related to the March 15, 2024 loss and would not present any evidence at trial pertaining thereto. R. Doc. 21. As a result, this Court granted Allstate's summary-judgment motion and dismissed with prejudice Plaintiffs' breach-of-contract and bad-faith claims related to the March 15, 2024 wind and hailstorm. R. Doc. 26.

[7] R. Doc. 18-2 at 1.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

supporting their claim.[17] On February 24, 2025, Plaintiffs provided the report which stated that two air conditioning units froze causing excessive water to leak onto the drywall and ductwork.[18] McCall advised Plaintiffs that, because their home had undergone significant demolition by the time of his inspection, it was impossible for him to determine the extent of the damage caused by the leaking air conditioning units, as opposed to preexisting damage.[19] He requested photographs of the damage prior to the mitigation, removal, and dry-out, along with any documentation detailing what was removed prior to his inspection.[20]

Allstate denied coverage on March 13, 2025, because McCall found that Plaintiffs' home had suffered from long-term leaking and seepage exposure, which was excluded from the policy's coverage.[21] The photographs that Plaintiffs provided to McCall, in his opinion, showed clear evidence of long-term damage, did not show all of the areas that underwent demolition, and did not show what the damaged areas looked like prior to the demolition.[22] Moreover, Allstate determined that Plaintiffs prejudiced its investigation of the claim by beginning repairs before it could inspect the property.[23]

On May 20, 2025, Allstate received a letter of representation from Plaintiffs' counsel.[24] Then, on August 28, 2025, Plaintiffs' counsel submitted to Allstate an estimate from Tiger Disaster Response ("Tiger") stating that the damage to Plaintiffs' home totaled $332,733.05.[25] On September 2, 2025, Plaintiffs' counsel sent to Allstate an estimate from Cajun Duct Cleaning and

[17] *Id.* at 2.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*; R. Doc. 1 at 3.

Sanitizing, LLC ("Cajun") in the amount of $124,135.39.[26] Also on September 2, 2025, Allstate informed Plaintiffs' counsel that the claim remained denied.[27] On September 26, 2025, Plaintiffs filed this action against Allstate, alleging that Allstate breached the insurance contract and acted in bad faith with respect to its adjustment and payment of the December 9, 2024 loss.[28]

After suit was filed, on March 25, 2026, Allstate's expert engineer, Timothy Hassenboehler, P.E., of EFI Global, Inc., inspected Plaintiffs' property.[29] Hassenboehler's April 15, 2026 report concluded that the water intrusion above the master bedroom did not result from a storm-created opening in the roof or a one-time water leak from the HVAC system, but rather was consistent with long-term condensation forming on the air conditioner's condensate drain lines.[30] He also determined that the fungal growth in the master bedroom's closet was consistent with improper insulation and that the fungal growth at the attic access door resulted from condensation forming on the colder door and framing due to a lack of proper insulation.[31] Further, Hassenboehler found that the water intrusion on the first-floor hallway ceiling was consistent with a plumbing leak or lack of maintenance from the bathroom on the second floor.[32]

Allstate's contractor expert, Dalvas Fusilier of LC Estimates, also inspected Plaintiffs' property on March 25, 2026.[33] In his April 28, 2026 report, Fusilier concluded that Plaintiffs failed to provide photographic evidence of supposed water damage and neglected the condition of the property until January 2, 2025.[34] He also found that the remediation did not comply with certain industry standards, which, by including amounts for preexisting damage, resulted in improperly

[26] R. Docs. 18-2 at 2; 16-2.
[27] R. Doc. 18-2 at 2.
[28] R. Doc. 1 at 1-8.
[29] R. Doc. 18-2 at 2.
[30] *Id.*
[31] *Id.* at 3.
[32] *Id.*
[33] *Id.*
[34] *Id.*

inflated cost estimates for remediation and repair.[35] Fusilier opined that the supposed December 9, 2024 HVAC leak would have affected only the master bedroom and hallway ceiling, not the other reportedly affected rooms.[36] He further stated that the Plaintiffs failed to gather evidence supporting the supposed water damage prior to demolition and that the presence of mold was unrelated to the alleged December 9, 2024 loss event.[37]

On August 5, 2026, Plaintiffs produced to Allstate their expert reports, which included a November 15, 2024 report by All American Inspections & Testing, LLC ("All American") that found microbial growth present in the home resulting from active and past roof leaks, inadequate insulation, building envelope air management deficiencies, and HVAC deficiencies, among other things.[38] Notably, this report predates the December 9, 2024 loss and found that the mold species present are commonly found in water-damaged buildings.[39] Plaintiffs also produced an undated report authored by Gipson in which he opined that "the HVAC systems experienced leakage, condensate-related water accumulation, contamination, and operational deficiencies that resulted in moisture migration and ensuing damage to building materials throughout the residence," with the HVAC system distributing "microbial contaminants throughout occupied living spaces."[40] Gipson based his findings, in part, on All American's November 15, 2024 report and did not mention an accidental HVAC leak occurring on December 9, 2024.[41]

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] R. Doc. 18-3 at 1-2
[39] *Id.*
[40] R. Doc. 18-4 at 1.
[41] *Id.* at 1-11.

## II. LAW & ANALYSIS

### A. Allstate's Motion for Summary Judgment

Allstate argues that it is entitled to summary judgment dismissing with prejudice Plaintiffs' breach-of-contract and bad-faith claims arising from the alleged December 9, 2024 loss event.[42] With respect to the breach-of-contract claim, Allstate argues that Plaintiffs' actions caused Allstate actual prejudice in its claim investigation procedure by reporting the loss a month after it supposedly occurred and after the property had already undergone demolition, drying out, cleanup, removal of the two air conditioners, and partial repairs.[43] Allstate points out that Plaintiffs had the benefit of the All American and Gipson reports that found preexisting, prolonged moisture exposure, but failed to afford Allstate the opportunity to ascertain the extent of the damage associated with the alleged December 9, 2024 HVAC leak event, as opposed to other preexisting causes.[44] Allstate contends that Plaintiffs failed to comply with the policy provision requiring the insured to immediately report a loss and show Allstate the damaged property.[45] As to Plaintiffs' bad-faith claim, Allstate argues that Plaintiffs cannot maintain such a claim when they have no valid breach-of-contract claim or, alternatively, if Plaintiffs' breach-of-contract claim survives summary judgment, Allstate had, and continues to have, a reasonable basis to defend the claim.[46]

In opposition, Plaintiffs argue that there are genuine issues of material fact that preclude summary judgment.[47] First, Plaintiffs argue that summary judgment is not warranted on their breach-of-contract claim because their actions, in their view, did not prejudice Allstate.[48] Plaintiffs say that the air conditioning leak likely occurred in November 2024, and that they contacted

[42] R. Doc. 18.
[43] R. Doc. 18-1 at 8.
[44] *Id.* at 8-10.
[45] *Id.* at 9.
[46] *Id.* at 10-13.
[47] R. Doc. 23.
[48] *Id.* at 5-9.

remediation specialists as soon as they realized there was a problem because the Allstate policy required them to protect their property from further loss.[49] But Plaintiffs claim that no repair work was done before McCall's inspection.[50] Plaintiffs also state that they believe that the air conditioning units were in the dumpsters outside the house when McCall conducted his inspection, so the units were available for examination.[51] Finally, Plaintiffs suggest that Allstate had substantial evidence to evaluate their claim, including the reports issued by All American and Gipson.[52] With respect to their bad-faith claim, Plaintiffs argue that they submitted multiple satisfactory proofs of loss to Allstate, which then acted arbitrarily and capriciously in failing to pay.[53] Plaintiffs contend that there are disputed issues of material fact concerning the adequacy of McCall's inspection, in which, say Plaintiffs, he failed to discover readily apparent damage, resulting in large disparities between Allstate's damage estimate and those provided by Plaintiffs' experts and, subsequently, Allstate's underpayment of the claim.[54]

Allstate replies, arguing that Plaintiffs have failed to prove that the property damage was caused by a covered loss – namely, a sudden, accidental HAVC leak event – as opposed to long-term water exposure, which is excluded from coverage.[55] Allstate points out that Plaintiffs did not testify as to a sudden leak event.[56] Moreover, says Allstate, Plaintiffs now contend that the alleged December 9, 2024 leak more likely occurred in November 2024, as, in that month, All American found microbial growth throughout the interior of the property caused by roof leaks and HVAC deficiencies, among other things.[57] Allstate asserts further that, while Plaintiffs indeed had the

[49] *Id.* at 5, 8.
[50] *Id.* at 6.
[51] *Id.*
[52] *Id.* at 9.
[53] *Id.* at 10-11.
[54] *Id.* at 11-12.
[55] R. Doc. 25 at 1-4.
[56] *Id.* at 2.
[57] *Id.* at 3.

obligation to mitigate the damage, they also were obligated to promptly report the claim to Allstate and allow it to inspect the property so that it could verify the cause of the damage, which, in Allstate's view, Plaintiffs failed to do.[58] Again, Allstate urges that it should have had the opportunity to inspect the air conditioning units in place or Plaintiffs should have documented the condition of the affected areas before demolition.[59] In that same vein, says Allstate, Plaintiffs failed to segregate the damage caused by the March 15, 2024 storm event from that caused by the December 9, 2024 HVAC leak event.[60]

**1. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

[58] *Id.* at 1-4.
[59] *Id.* at 2.
[60] *Id.* at 3.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**2. Plaintiffs' Breach-of-Contract Claim**

Under Louisiana law, an insurance policy, like any other contract, is construed according to the general rules of contract interpretation set forth in the Louisiana Civil Code. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256-57 (5th Cir. 2022) (citing *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 2007)). "Courts must first consider the parties' intent by examining the words of the policy." *Id.* at 257 (citing *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 589 (La. 2007); La. Civ. Code arts. 2045-2046). In examining the terms of the policy, "words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning." *Id.* (quoting *Sims*, 956 So. 2d at 589). "When the words of an insurance contract are clear and unambiguous and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent." *Id.* (quoting *Gorman v. City of Opelousas*, 148 So. 3d 888, 982 (La. 2014)). While the insured has the burden of proving that the circumstances constitute a covered claim, the insurer has the burden of proving that any exclusions apply. *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000).

Allstate's summary-judgment motion is premised on the notion that it was actually prejudiced when Plaintiffs did not give prompt notice of the loss or afford Allstate an adequate

opportunity to inspect the property prior to demolition.[61] In its motion, Allstate relies on a provision of the policy titled "What You Must Do After A Loss," which requires the insured to immediately notify Allstate and show it the damaged property as often as necessary, unimpeded by actions of the insured.[62] Allstate does not argue that this notice provision constitutes a condition precedent to coverage. "The rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992). As one court observed, "[u]nder Louisiana law, it is extraordinarily difficult for an insurer to show actual prejudice from breach of a notice condition at the summary judgment stage." *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.,* 57 F. Supp. 3d 728, 762 (E.D. La. 2014), *aff'd*, 593 F. App'x 408 *and* 800 F.3d 178 (5th Cir. 2015). "Prejudice has generally only been found at the summary judgment stage when the insurer is not notified until the eve of trial, or even after trial." *Id.* Here, Allstate has not shown sufficient prejudice to warrant summary judgment in its favor on the notice issue. It was able to inspect the property within days of opening the claim and has been able to engage experts in the litigation. While it is true that Allstate's investigation may have been hampered by Plaintiffs' decision to begin work without first letting Allstate inspect the property, Allstate has not shown prejudice sufficient to warrant dismissal with prejudice at the summary-judgment stage. *See Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 956 (5th Cir. 1991) (reversing district court's grant of summary judgment where record was insufficient to show prejudice when insurer was not informed of loss for four years but was able to engage experts in

---

[61] R. Doc. 18-1 at 7-10. In its reply, Allstate argues, in part, that the loss resulted from long-term water damage, which is excluded from coverage. *See* R. Doc. 25. Because the exclusion is not specifically raised in the motion, the Court will not address it here.

[62] R. Doc. 18-1 at 9 (quoting R. Doc. 18-2 at 52-53).

the litigation). Accordingly, Allstate's motion for summary judgment on Plaintiffs' breach-of-contract claim is denied.

**3. Plaintiffs' Bad-Faith Claim**

"In order to establish a cause of action for penalties and/or attorney fees and costs under [La. R.S. 22:1892, formerly] La. R.S. 22:658, a claimant must show that (1) an insurer has received satisfactory proof of loss, (2) the insurer failed to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Guillory v. Lee*, 16 So. 3d 1104, 1126 (La. 2009).[63] "The phrase 'arbitrary, capricious, or without probable cause' is synonymous with 'vexatious,' and a 'vexatious refusal to pay' means 'unjustified, without reasonable or probable cause or excuse.'" *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1114 (La. 2008) (quoting *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003)). "[A]n insurer must pay any undisputed amount over which reasonable minds could not differ." *Dupree v. Lafayette Ins. Co.*, 51 So. 3d 673, 698 (La. 2010). "[W]hen there is a 'reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist.'" *La. Bag*, 999 So. 2d at 1114 (quoting *Reed*, 857 So. 2d at 1021); *see also Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 679 (5th Cir. 2009) ("An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss."); *Brown v. State Farm Mut. Auto. Ins. Co.*, 93 So. 3d

[63] Similarly, La. R.S. 22:1973, before its repeal in 2024, authorized an award of penalties when an insurer's failure to pay a claim within 60 days after the receipt of a satisfactory proof of loss was "arbitrary, capricious, or without probable cause." The prohibited conduct in each statute is virtually identical with the primary difference being a 30- or 60-day period for payment of claims. *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000). Plaintiffs did not allege a cause of action under § 1973. Nevertheless, the Court mentions the relationship between the statutes because the cases cited herein may refer to § 1973, instead of, or interchangeably with, § 1892. Regardless of which statute is discussed, the cases apply to, or at least inform the analysis of, Plaintiffs' bad-faith claim alleged under § 1892.

697, 702 (La. App. 2012) (affirming summary judgment holding that an insurer did not act in bad faith by refusing to "pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss"); *Jones v. Gov't Emps. Ins. Co.*, 220 So. 3d 915, 924 (La. App. 2017) (affirming summary judgment holding that insurer did not act arbitrarily and capriciously in delaying payout of disputed claim, and observing: "It is settled law that when an insurer has a reasonable basis for defending a claim and acts in good-faith reliance on that defense, statutory penalties are inappropriate."); *Bell v. Steckler*, 285 So. 3d 561, 571-72 (La. App. 2019) (affirming summary judgment dismissing bad-faith claim against insurer for lack of evidence that the insurer acted vexatiously or that there was no valid dispute as to coverage). A plaintiff bears the burden of showing that an insurer acted in bad faith. *Guillory*, 16 So. 3d at 1126-27.

Here, the undisputed facts surrounding the adjustment process demonstrate that Allstate did not act in bad faith in refusing to pay Plaintiffs' insurance claim. Allstate expeditiously sent an adjuster, McCall, to inspect the property, just five days after receiving notice of Plaintiffs' claim. Although McCall noted at the inspection that two of the air conditioning units were removed, demolition, drying out, and cleanup were completed, and repairs were underway, he asked Plaintiffs to provide the HVAC company report, pre-demolition photographs of the damage, and all other documents supporting their claim. Only after Plaintiffs provided the report, and what McCall deemed inadequate photographic evidence, did Allstate deny the claim due to questions about whether the damage was caused by a supposed December 9, 2024 sudden leak event, as opposed to preexisting long-term water damage. Plaintiffs had also provided Allstate with the reports of All American and Gipson which indicated that the water intrusion predated December 9, 2024. The policy excludes from coverage "[s]eepage, meaning continuous or repeated seepage

or leakage over a period of weeks, months, or years, of water, steam or fuel … from a[n] … air conditioning … system."[64] McCall, from his own inspection and review of the All American and Gipson reports, determined that Plaintiffs' property sustained prolonged water intrusion, not a sudden accidental leakage event on December 9, 2024. In denying coverage in this instance, Allstate was within its rights to rely on the experts – both Plaintiffs' and its own – and the policy language. This is not bad faith, but rather a substantial, reasonable, and legitimate dispute over the cause of the loss.

This case is analogous to *Bellina v. Liberty Mutual Insurance Company*, 2021 WL 1295018, at *5-7 (E.D. La. Apr. 7, 2021), where the court granted summary judgment to the insurer and dismissed the plaintiff's bad-faith claims because there was a legitimate dispute regarding whether coverage for the roof damage was barred by the insurance policy's wear-and-tear exclusion. There, the court held that the insurer had a good-faith reason to find that the exclusion applied and to deny the claim when the insurer's adjuster found signs of long-term wear on the roof. *Id.* The court noted that "[w]hen an insurer has a good-faith reason to believe that an exclusion bars coverage, it does not act in bad faith by not paying on the claim and instead choosing to litigate the question of coverage." *Id.* at *7 (citing *Estate of Munsterman v. Unitrin Auto & Home Ins.*, 307 So. 3d 297, 306 (La. App. 2020) (denying bad-faith damages where an insurer had a legitimate and reasonable doubt about coverage based on a policy exclusion); *Tally v. Blue Cross Blue Shield of La.*, 760 So. 2d 1193, 1195-96 (La. App. 2000) (finding that insurer did not act in an arbitrary and capricious manner in denying payment because the insurer had just and reasonable grounds to believe that an exclusion applied); *Marcelle v. S. Fid. Ins. Co.*, 954 F. Supp. 2d 429, 435-36 (E.D. La. 2013) (same)). In like fashion, this Court finds that Allstate did not act in an

[64] R. Doc. 18-2 at 45.

arbitrary and capricious manner in denying Plaintiffs' claim because it had just and reasonable grounds, including its expert's investigations and opinions, along with Plaintiffs' own expert reports, to believe that the policy exclusion applies. Accordingly, the Court grants Allstate's motion for partial summary judgment as to Plaintiffs' bad-faith claim.[65]

**4. Allstate's Motion *In Limine* to Exclude Plaintiffs' Property Repair Estimates**

Allstate seeks to exclude from evidence an Xactimate estimate prepared by Cajun and a damage evaluation prepared by Tiger based on Cajun's estimate.[66] Allstate argues that, under Louisiana law, because Plaintiffs' property has been fully repaired, their actual payment invoices are the best evidence of their damage, making the estimates inadmissible.[67] Plaintiffs agree that the estimates are inadmissible as to their breach-of-contract claim, but contend that they are admissible to show bad faith.[68] Plaintiffs further argue that Allstate's attempt to exclude the estimates should not lead to the exclusion of Gipson's testimony at trial.[69] Allstate replies, arguing that the estimates are irrelevant to the bad-faith determination and it is not attempting to entirely exclude Gipson, simply any testimony he might offer based solely on the estimates.[70]

As both parties to this litigation acknowledge, "to the extent any of the items damaged have been repaired, estimates are improper evidence for that item's repair costs; consequently, [p]laintiff's evidence is limited to the actual repair costs." *Bhrahmani 1 LLC v. AmGUARD Ins. Co.*, 2023 WL 3474575, at *2 (W.D. La. May 15, 2023). Moreover, because this Court has dismissed Plaintiffs' bad-faith claim, it need not determine whether the estimates are admissible as to that claim. Thus, the Cajun estimate and the Tiger damage evaluation derived from it, must

---

[65] Although the Court dismisses the Plaintiffs' bad-faith claim at this juncture, it does not now resolve the dispute between the parties concerning coverage – an issue that remains for trial.
[66] R. Doc. 16.
[67] R. Doc. 16-1 at 1-3.
[68] R. Doc. 22 at 1-6.
[69] *Id.*
[70] R. Doc. 24 at 1-3.

be excluded from trial. This Court notes, however, that Gipson may testify as to matters apart from and not based on those estimates.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Allstate's motion *in limine* to exclude Plaintiffs' property repair estimates (R. Doc. 16) is GRANTED.

IT IS FURTHER ORDERED that Allstate's motion for summary judgment (R. Doc. 18) is DENIED as to Plaintiffs' breach-of-contract claim.

IT IS FURTHER ORDERED that Allstate's motion for summary judgment (R. Doc. 18) is GRANTED as to Plaintiffs' bad-faith claim, which is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 17th day of September, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE